ORIGINAL

Approved: _____
 JAMES MCDONALD
 Assistant United States Attorneys

Before:   HONORABLE RONALD L. ELLIS
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA          :    COMPLAINT
                                  :
        - v. -                    :    Violation of
                                  :    21 U.S.C. § 846
VICTOR MANUEL SIMENTAL ROMAN, and :
JAIME CASTILLO-ROMAN,             :    COUNTY OF OFFENSE:
                                  :    NEW YORK
                                  :
        Defendants.               :
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    MARK HADZEWYCZ, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration (the "DEA"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

    1.  In or about September 2015, in the Southern District of New York and elsewhere, VICTOR MANUEL SIMENTAL ROMAN and JAIME CASTILLO-ROMAN, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.  It was a part and an object of the conspiracy that VICTOR MANUEL SIMENTAL ROMAN and JAIME CASTILLO-ROMAN, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

    3.  The controlled substance that VICTOR MANUEL SIMENTAL ROMAN and JAIME CASTILLO-ROMAN, the defendants, conspired to distribute and possess with intent to distribute was one

1

kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Sections 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA. This affidavit is based upon my personal participation in the investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records prepared by law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my conversations with other law enforcement agents involved in this investigation my review of documents related to this investigation, and my review of recorded conversations, I have learned, in substance and in part, that:

 a. The DEA has an active investigation into an international drug trafficking organization (the "DTO") that transports, among other controlled substances, heroin primarily from Mexico to the United States.

 b. During the course of that investigation, a confidential source ("CS-1")[1] has been working with the DEA. From my conversations with CS-1, and from my review of reports of debriefings of CS-1, I have learned, in substance and in part, that CS-1 identified an individual known to CS-1 as "Victor" as a supplier of heroin.

---

[1] CS-1 is assisting the DEA in exchange for money. Information provided by CS-1 has been shown to be reliable and corroborated by, among other things, seizures of narcotics, including the heroin seized as described herein. CS-1 has a criminal history that includes narcotics convictions. The actions by CS-1 set forth herein were at the direction of law enforcement.

c. On or about September 22, 2015, CS-1 communicated through phone calls, recorded at the direction of the DEA, with "Victor," later identified as VICTOR MANUEL SIMENTAL ROMAN, the defendant. In those phone calls CS-1 and SIMENTAL ROMAN agreed, in substance and in part: (i) that CS-1 would purchase from SIMENTAL ROMAN approximately five kilograms of heroin for a specified amount of money (the "Five Kilogram Heroin Sale"); (ii) that SIMENTAL ROMAN would initially provide CS-1 between approximately two and three kilograms of heroin on consignment on or about September 22, 2015 in the vicinity of Philadelphia, Pennsylvania (the "September 22 Heroin Pickup"); and (iii) that CS-1 should come to a restaurant in the vicinity of Philadelphia (the "Philadelphia Restaurant") to coordinate the transaction.

d. On or about September 22, 2015, CS-1 met with VICTOR MANUEL SIMENTAL ROMAN and an individual later identified as JAIME CASTILLO-ROMAN, the defendants, at the Philadelphia Restaurant, where they discussed the Five Kilogram Heroin Sale and the September 22 Heroin Pickup.

e. CS-1, SIMENTAL ROMAN, and CASTILLO-ROMAN then left the Philadelphia Restaurant and traveled to a residence in the vicinity of Charles Street in Philadelphia, Pennsylvania (the "Philadelphia Residence").

f. Upon arriving at the Philadelphia Residence, both SIMENTAL ROMAN and CASTILLO-ROMAN put on latex gloves and began filling six large plastic bags with a substance that they told CS-1 was heroin (the "Large Plastic Bags"). SIMENTAL ROMAN and CASTILLO-ROMAN placed the Large Plastic Bags on a scale, which showed the weight of the Large Plastic Bags to be approximately 2.3 kilograms. SIMENTAL ROMAN and CASTILLO-ROMAN then provided the Large Plastic Bags to CS-1.

g. After receiving the Large Plastic Bags, CS-1 stated to SIMENTAL ROMAN and CASTILLO-ROMAN, in substance and in part, that CS-1 intended to drive to the vicinity of New York City, where CS-1 lived and would sell the heroin. SIMENTAL ROMAN and CASTILLO-ROMAN stated, in substance and in part, that they would follow CS-1 to the vicinity of New York City to see where CS-1 lived.

h. CS-1, SIMENTAL ROMAN, and CASTILLO-ROMAN then left the Philadelphia Residence and drove to the vicinity of New York City. CS-1 drove alone in a vehicle (the "CS-1 Vehicle") and SIMENTAL ROMAN and CASTILLO-ROMAN followed in a separate vehicle (the "Defendants' Vehicle"), which CASTILLO-ROMAN drove.

6. From my participation in this investigation, my surveillance of the New York Meeting Location, my conversations with other agents who also conducted surveillance of the New York Meeting Location, and my review of recorded conversations, I have learned the following, in substance and in part:

   a. At approximately 10:30 p.m. on September 22, 2015, CS-1 parked the CS-1 Vehicle in the vicinity of 176th Street and Fort Washington Avenue in Manhattan (the "New York Meeting Location"), and CASTILLO-ROMAN parked the Defendants' Vehicle nearby in the vicinity of the New York Meeting Location.

   b. CS-1 then exited the CS-1 Vehicle, approached the Defendants' Vehicle, and stated to CASTILLO-ROMAN and SIMENTAL ROMAN, in substance and in part, that an associate of CS-1 ("CS-2")[2] would come to the Defendants' Vehicle to provide CASTILLO-ROMAN and SIMENTAL ROMAN with a partial payment.

   c. At approximately 10:33 p.m. on September 22, 2015, CS-2 approached the Defendants' Vehicle, which was parked at the New York Meeting Location and, along with CS-1, entered the back seat of the Defendants' Vehicle. CASTILLO-RAMON and SIMENTAL RAMON were sitting in the front seat of the Defendants' Vehicle.

   d. Inside the Defendants' Vehicle, CS-2 stated, in substance and in part, that he had with him a bag that contained approximately $40,000 in United States Currency (the "Bag") which would serve as a partial payment. CS-1 instructed CS-2, in substance and in part, to give the Bag to SIMENTAL ROMAN, which CS-2 did. This conversation was recorded, at the direction of the DEA, using a covert audio recording device. Thereafter, CS-1 and CS-2 exited the Defendants' Vehicle.

   e. Law enforcement agents then approached the Defendants' Vehicle, identified themselves as law enforcement officials, observed the Bag in the floor of the front passenger seat, where SIMENTAL ROMAN was sitting, and handcuffed CASTILLO-ROMAN and SIMENTAL ROMAN.

---

[2] CS-2 has pled guilty to a narcotics-related offense, and has agreed to assist the Government pursuant to a cooperation agreement, and in hopes of receiving leniency at sentencing. The actions by CS-2 set forth herein were at the direction of law enforcement.

7. Based on my review a Consular Identification Card provided to law enforcement agents by JAMIE CASTILLO-ROMAN, I know that the Consular Identification Card lists the address of the Philadelphia Residence as CASTILLO-ROMAN's address.

8. Based on my review of records and reports related to the contents of the Large Plastic Bags, and my conversations with other law enforcement agents, I have learned, in substance and in part, that DEA agents field-tested a sample of the substance contained in the Large Plastic Bags, which tested positive for the presence of heroin. In addition, based on my training and experience, I believe the weight of the heroin contained in the Large Plastic Bags to be more than two kilograms.

WHEREFORE, deponent respectfully requests VICTOR MANUEL SIMENTAL ROMAN and JAIME CASTILLO-ROMAN, the defendants, and be imprisoned or bailed, as the case may be.

_____
MARK HADZEWYCZ
Special Agent
Drug Enforcement Administration

Sworn to before me this
23rd day of September, 2015

_____
THE HONORABLE RONALD L. ELLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5